## THE STATE ex rel. ST. JOSEPH WATER COMPANY v. LUCIAN J. EASTIN et al., Appellants.

In Banc, June 25, 1919.

1. **ESTOPPEL: Part Payment and Acceptance.** If the only plea to a suit for the balance of money alleged to be due under a contract is part payment, and there is no evidence that the payments were accepted or agreed to be accepted, expressly or impliedly, in full of the claim, the acceptance does not constitute estoppel or accord and satisfaction.

2. **BREACH OF CONTRACT: Insufficient Supply: Acceptance: Counterclaim.** The defense to relator's action for a balance due for water furnished defendants' building by the month that the pressure was not sufficient to carry the water to the upper floors and

State ex rel. Water Co. v. Eastin.

that therefore there was a breach of the contract, is not available, if the water was accepted and there was no counterclaim and the relator contends that the contract did not cover any liability for lack of pressure.

3. **RES ADJUDICATA: New Question: Settled by Implication.** A final decision in a former suit between the same parties, but upon a different claim or demand, does not constitute estoppel of record. In such circumstances the inquiry must always be as to the question actually litigated and determined in the former action; not what might have been determined. So that a decision in a former suit, wherein the water company sued for water supplied to defendants after July, 1909, and prior to February 23, 1912, that the extension of the city limits so as to include defendants' building abrogated a contract rate and put into force the ordinance rate, was not *res adjudicata* of a suit for water supplied after February 23, 1912, wherein the question of the constitutionality of the ordinance is raised, nor can it be held that such question was decided by implication, since it was in no wise presented by the pleadings.

Appeal from Buchanan Circuit Court.—*Hon. Thomas B. Allen*, Judge.

AFFIRMED.

*James W. Boyd* for appellants.

(1) One vital issue involved in this case was adjudicated long before this suit was brought, and the subject-matter of the suit then became *res adjudicata*. State ex rel. Buchanan County v. Patton, 271 Mo. 554; State ex rel. v. Mining Co., 262 Mo..502; Exposition Driving Park v. Kansas City, 174 Mo. 438; Turnverein v. Hagerman, 232 Mo. 704; Edmonson v. Carter, 180 Mo. 515; LaRue v. Kempf, 186 Mo. App. 701; Drake v. Mayor of New York, 77 N. Y. 611; So. Minn. Ry. Ext. Co. v. Railroad, 55 Fed. 690; Hirshbach v. Ketchum, 82 N. Y. Supp. 739; Rankin v. City of Big Rapids, 133 Fed. 670; Railway Co. v. Carson, 169 Ill. 247; State ex rel. St. Joseph Water Co. v. Geiger, 246 Mo. 74. (a) In the case of State ex rel. Water Company v. Geiger, 246 Mo. 74, it was decided and adjudicated by

this court that the extension of the limits of the city made it the duty of the water company to furnish water to the Hospital, in accordance with the price fixed by the ordinance of said city. (b) The ordinance and the contracts in evidence in that case, were the same as the facts and the ordinances and contracts in this case. (c) The issues decided in that case were identical with the issue in this case, except as to the amount. The amount sued for in that case was $2186.33, and that sum is included in the amount of $16,279.84, sued for in this case. (2) When a party sues upon a contract he must show compliance therewith or fail to recover. Koon v. St. Louis' Car Co., 203 Mo. 227. (3) The water company furnished some water during the years 1912, 1913, 1914, and 1915, and it was regularly paid therefor, according to its own account, at the rate of six cents per thousand gallons. When said company received and accepted payment, at the rate of six cents per thousand gallons, it knew that six cents was all the Hospital expected to pay, or should pay, or could be required to pay. After the water company ceased to supply any water, and after it had received payment at six cents per thousand gallons, and after it accepted such payment, it is now estopped, or should be, from demanding or recovering a further sum.

*John E. Dolman* and *Vinton Pike* for respondent.

(1) The relator did not guarantee pressure or agree to do anything more than to deliver water from its main into respondent's fixtures. No complaint was made during performance, which was accepted as substantial compliance. The board acknowledge performance by accepting relator's monthly statements, auditing them and allowing the bills at a six per cent rate—everything all right but the price. This case in this respect does not differ from Waterworks v. Joplin, 177 Mo. 527. See also Water & Light Co. v. Lamar, 140 Mo. 145. (2) This course of action has not been adjudicated heretofore. The thing in action here is not the same.

The former suit was for water supplied prior to February 1, 1912, and the water sued for in this action was supplied after that date. The validity of relator's contract has not been decided against it, but has been affirmed by the former decision. Relator's right under the contract was conceded in that case, if the ordinance extending the city limits were out of the way. The most that can be claimed for the former decision is that the extension ordinance was a defense to the specific claim made in the former suit. The legal effect of it is that the water sued for in the former case was supplied under the ordinance obligation and not under the contract between relator and the board. The court said so, for it held that the board was not obliged to take that water under the contract, and did take it under the ordinance, by virtue of which relator was obliged to supply that water. The contract was not annulled or abrogated; an erroneous declaration of law compelled a change of fact as to a specific part of relator's service. If it be held erroneously that it supplied the water in 1911 and 1912 under the ordinance obligation it cannot follow that water supplied in 1913, 1914 and 1915 in performance of the contract obligation was in legal contemplation supplied under the ordinance obligation. (3) This is not a case where the specific thing sued for has been recovered or defeated in a former suit. Relator has not recovered the thing sued for before, or been denied a recovery of the same thing. In such case the effect of the former adjudication is limited strictly to the very point decided. State ex rel. v. Mining Co., 262 Mo. 502; Cromwell v. Co. of Sac, 94 U. S. 351; La Rue v. Kempf, 186 Mo. App. 72. (4) The petition and writ in this case set forth all the facts which brought before the court the same facts we have now in the present record. They could not have been more formally before the court than we have them now. The defendant instead of relying upon the former decision, which had decided a matter of law merely upon general demurrer, raised the question anew and asked that the court

determine the question again, and having got a decision contrary to the former, the question was set at large as the last decision neutralized the first. Chicago v. People, 189 Ill. 349; Pearce v. Brantum, 16 La. 414; House v. Lockwood, 17 N. Y. Supp. 817; Pratt v. Wilcox, 64 Fed. 589; Seymour v. Herbert, 92 Pa. St. 499; Peoples Bank v. Heath, 175 Mass. 131; Negerle v. Ashe, 33 Cal. 74; In re Evans, 42 Utah, 282; Cooley v. Imp. Co., 78 Ore. 384; Simple v. Ware, 42 Cal. 619; Semple v. Wright, 32 Cal. 659; Paskewie v. East, 197 Ill. App. 1. (5) The petition and writ in this case are not the same as in the former case. Here facts are set forth which show the consideration for the contract was the cost of constructing the main, a mile in length, outside the then city limits and for the sole use of the Hospital. When the line was extended within the limits the relator might, and was required to place public hydrants every 500 feet, for which it received an annual return of $40 per hydrant. This return it could not have from the line extended outside the limits to the Hospital. The ten-cent rate was in lieu of that income as well as compensation for water service. Relator had put its funds in the main to be returned to it by the contract rate. The obligation of the contract on its part was to build the main and supply the water, and on the part of the Hospital to pay ten cents per 1000 gallons for water supplied and the construction of the means to supply it. To allow the ordinance to abrogate the contract impaired its obligation, and to compel the relator to use its main in supplying water without the full compensation stipulated was taking its property for a public use without compensation. This question was ignored in the opinion and decision in the former case. In this case this court held the ordinance had no effect upon the contract and expressly held that, if it did have the effect claimed, it would be void as taking away rights secured by the relator by the Constitution. On the present writ this question or matter was decided; in the former case it was not decided. Cromwell v. County of Sac, 94 U. S.

351; State ex rel v. Mining Co., 262 Mo. 502; Norman v. Sylvia, 59 Atl. (R. I.) 112; C. B. & Q. v. Cass Co., 101 N. W. (Neb.) 11; Evans v. Birge, 11 Ga. 272. (6) In the former case the court decided the relator could not recover on its contract for water supplied in 1911 and 1912, because the ordinance abrogated the contract, the constitutional question not being raised, and hence must have been waived as to the water then sued for. In this case the constitutional question was raised, and the court holds that the ordinance did impair the obligation of the contract, and was therefore without effect to that extent.

BLAIR, J.—This is an appeal from a judgment for relator in a proceeding by mandamus to compel appellants to audit, allow and pay a claim for a balance alleged to be due for water furnished during a period of about four years preceding the application for the alternative writ. The facts are stated in State ex rel. v. Eastin, 270 Mo. 193, and a restatement of them in detail will not be necessary.

Under a franchise ordinance adopted and accepted in 1900, relator, a public service corporation, agreed to furnish water to large consumers in the City of St. Joseph at the rate of six cents per thousand gallons. State Hospital No. 2, of which appellants are the Board of Managers, was situated outside the limits of the city. In 1905 appellants' predecessors in office entered into a contract with relator whereby relator agreed to lay certain pipes and furnish water to the Hospital at a rate of ten cents per thousand gallons. The main was extended and water furnished and paid for at the 1905-contract rate until the city extended its limits in such wise as to bring the Hospital within them. Thereafter, the Board of Managers refused to pay in excess of the ordinance rate of six cents per thousand gallons.

February 23, 1912, relator instituted a mandamus proceeding in this court to compel payment for a balance then asserted to be due under the private contract rate.

The alternative writ was quashed by Court in Banc, November 26, 1912. Additional facts will be stated in the opinion.

Appellants contend that (1) an issue conclusive of this case was adjudicated in the former proceeding, (2) there was no compliance with the contract, (3) and acceptance of payment of six cents per thousand gallons estops relator.

I. It is contended the acceptance of payments equivalent to six cents per thousand gallons furnished estops relator to demand a balance, even though it be conceded the ten-cent contract was and is in force. Relevant to this question there is nothing urged save the fact of part payment. There was no plea of accord and satisfaction. There was no evidence the payments were accepted or agreed to be accepted, expressly or impliedly, in full of the claim. In these circumstances the acceptance cannot be held to have constituted either estoppel, accord or satisfaction. [Pollman Coal Co. v. St. Louis, 145 Mo. l. c. 656, et seq.]

*Estoppel.*

II. The next point made is that sufficient pressure was not furnished to carry water to the upper floors of the Hospital; that this was a breach of the contract and precludes recovery for the water actually furnished and received. The only principle advanced in support of this is that relator "cannot sue on one cause of action and recover on another." No counterclaim was pleaded. Relator contends the contract did not cover any liability for lack of pressure. The contract need not be construed. The Hospital accepted the water furnished. The point is ruled against appellants for the reason given in Waterworks Co. v. Joplin, 177 Mo. l. c. 526 et seq., and cases cited.

*Breach: Acceptance.*

III. It is contended that a question vital to the case was decided in State ex rel. v. Geiger, 246 Mo. 74, and

that relator is estopped thereby. That was a final de-

**Res Adjudicata.**
cision in a case between the same parties, but upon a different claim or demand. In these circumstances "the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been then litigated or determined." [Cromwell v. Sac County, 94 U. S. 351, 353; approved in State ex rel. v. Mining Co., 262 Mo. 1. c. 501, 502.] While the Mining Company case was a tax suit, the rule in this State is, in such cases, the same as the rule generally applicable, as the opinions in that case and cases cited (l. c. 500) show.

In the Geiger case, supra, the proceeding involved water delivered after July, 1909, and prior to February 23, 1912. Relator relied upon the same contract here involved, and appellants (here) relied upon the same franchise ordinance. Relator there contended it was entitled to be paid the 1905-contract rate of ten cents per thousand gallons. Appellants (respondents there) contended the extension of the city limits abrogated the contract and that the franchise ordinance rate of six cents applied. The contest was whether the one or the other rate was in force. The court summed up the controversy thus: "If, at the time of instituting this proceeding the contract of 1905 was in force, then the balance claimed by relator was due and it is entitled to the relief prayed for. On the other hand, if the extension of the city limits so as to include the hospital had the legal effect of limiting relator's charges to the rate provided by the ordinance, then the writ should be denied."

The court then held: (1) that in the absence of regulation by competent authority a public service corporation and consumers may fix rates by contract; (2) that the extension of the city limits, in the absence of special provision to the contrary, extends to the added territory "all ordinances and contracts of a general nature;" (3) that the contract of 1905 was abrogated by the annexation of the hospital grounds; and (4) concluded that the ordinance rate governed.

In the Geiger case the pleadings did not present and the court did not determine the question of the constitutionality of the ordinance as applied in that case and as sought to be applied in this. In a case like this, in which the suit is upon a different demand, it is not to be held that a question was determined by necessary implication which question the pleadings did not present and, under a long and firmly settled rule, is not raised for determination unless it is so presented. The identical question whether a constitutional question is precluded in a second proceeding in circumstances substantially like those in this case has been the subject of adjudication.

In Boyd v. State, 94 U. S. 645, Boyd had been indicted and convicted, under an act passed in 1871, of setting up and carrying on a lottery without legislative authority. A previous act (1868) was conceded by the State authorities to authorize what Boyd did, if such act was constitutional. Boyd had complied with its terms. In a previous prosecution against Boyd, the State Supreme Court had held the Act of 1868 constituted a contract between the State and those complying with it. In the case then before the Supreme Court of the United States the question of the constitutionality of the Act of 1868 had been, for the first time, raised, and the State Court had held it was unconstitutional and affirmed Boyd's conviction under the Act of 1871. In the United States Supreme Court the question was presented whether the State was estopped by the holding in the former prosecution. Upon this question the court said (l. c. 648):

"It is true, that, in a former case against the same defendant, upon an indictment of a similar kind, for a previous offense of setting up and carrying on a lottery, the Supreme Court of the State held that the statute in question constituted a contract, and that the repealing act was for that reason void. But in that case the only subject before the court was the meaning of the statute—whether its provisions in their terms amounted to a contract which a subsequent enactment

could not impair. The constititionality of the act was not drawn in question; that was not denied.

"Courts seldom undertake, in any case, to pass upon the validity of legislation, where the question is not made by the parties. Their habit is to meet questions of that kind when they are raised, but not to anticipate them. Until then, they will construe the acts presented for consideration, define their meaning, and enforce their provisions. The fact that acts may in this way have been often before the court is never deemed a reason for not subsequently considering their validity when that question is presented. Previous adjudications upon other points do not operate as an estoppel against the parties in new cases, nor conclude the court, upon the constitutionality of the acts, because that point might have been raised and determined in the first instance. So when, in the present case, the point was taken for the first time against the constitutionality of the Act of 1868, the court was not precluded by the previous decisions from freely considering and determining it."

In Philadelphia v. Railway, 142 Pa. l. c. 493, it was said:.

"The argument of the company's counsel now is that, although, in the case referred to, the point does not appear to have been made or decided, yet the constitutionality of the Act of 1872 must be taken to have passed *in rem judicatam;* that the judgment in that case necessarily involved a decision that the statute imposing the tax was to that extent valid, and, although the cause of action is not the same, the city is estopped of record from re-litigating that question. [Cases relied on by counsel are then cited.]

"Whilst the general rule declared in these authorities is undoubtedly correct, it does not extend to estop a person from setting up the unconstitutionality of a statute, when the cause of action is not the same. The former judgment is absolutely conclusive upon parties, as to the cause of action involved in it, although the statute upon which the proceedings were taken was not

constitutional; that judgment can only be impeached collaterally for fraud or want of jurisdiction. It is a matter of no consequence now that the Act of 1872, upon which judgment was entered for the amount of the tax, was unconstitutional and void; judgment having been entered, and no appeal taken, the subject-matter of the issue in that suit is *res judicata*. The former judgment, therefore, operates as a bar to any subsequent action founded on the same demands. [Bigelow on Estop. 80-88.] In the case at bar, however, whilst the point in issue may perhaps be the same, the cause of action is different; and, although the verdict, with the judgment thereon, would furnish conclusive evidence of the matters in controversy upon which the verdict was rendered, and operate as a bar to the further litigation thereof, it would not preclude the plaintiff in this suit from asserting the unconstitutionality of the act upon which the previous action proceeded. [Bigelow on Estop. 90-103.]"

The rule has other support: Freeman v. Barnum, 131 Cal. l. c. 389; Bigelow on Estoppel (6 Ed.), pp. 112, 113; Cromwell v. County of Sac, supra.

The principle is sound, applicable and determinative of the question before us.

This disposes of all questions appellants present. The judgment is affirmed. All concur except *Woodson*, *J.*, not sitting.