**GLINES et al. v. HENWOOD et al.**
(two cases).

**In re ST. LOUIS SOUTHWESTERN RY. CO.**

Nos. 11303, 11345.

Circuit Court of Appeals, Eighth Circuit.
April 7, 1939.

Malcolm Fooshee, of New York City (Guy A. Thompson, of St. Louis, Mo., Edwin S. S. Sunderland, of New York City, and John M. Holmes, of St. Louis, Mo., on the brief), for appellant Guaranty Trust Co. of New York.

James Piper, of Baltimore, Md. (Henry S. Caulfield, of St. Louis, Mo., and Francis J. Carey, of Baltimore, Md., on the brief), for appellant Protective Committee.

A. H. Kiskaddon and Carleton S. Hadley, both of St. Louis, Mo., for appellee, Berryman Henwood, trustee.

W. R. Gilbert, of St. Louis, Mo. (A. M. Lewis and Hovey C. Clark, both of New York City, Roscoe Anderson, of St. Louis, Mo., Larkin Rathbone & Perry, of New York City, and Anderson, Gilbert, Wolfort, Allen & Bierman, of St. Louis, Mo., on the brief), for appellees Prudential Ins. Co. of America et al.

Edward W. Bourne, of New York City (Thomas W. White and G. Carroll Stribling, both of St. Louis, Mo., and Andrew Oliver, of New York City, on the brief), for appellee Bankers Trust Co., trustee.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

On December 12, 1935, the St. Louis Southwestern Railway Company, a Missouri corporation, filed a petition for reorganization under Section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205. On the same date a similar petition was filed and a similar order entered including the St. Louis Southwestern Railway Company of Texas, as a subsidiary debtor, in the same debtor proceeding. On April 21, 1936, the court made an order directing the trustee to pay interest on first mortgage certificates. That order recited that corresponding semi-annual instalments of such interest, due on the first days of May and November, thereafter, should be paid "during the pendency of this proceeding, unless by further order entered herein this court shall direct otherwise." Such instalments of interest were paid under the above order up to the instalment due May 1, 1938. On April 25, 1938, the trustee filed a petition asking advantage of the ninety day grace period for payment of that instalment, which resulted in an order to that effect. On June 17, 1938, the trustee prayed an order authorizing and directing him to pay such interest instalment on or before July 25, 1938.

To this petition the trustee under a first terminal and unifying mortgage and a committee of bondholders under that mortgage filed separate answers challenging the right to payment of this interest. Various holders of the above certificates, the trustee under the certificates, the debtor, and the trustee filed separate replies to the above answers. A hearing was had, findings of fact were made and conclusions of law stated and order entered authorizing the trustee to pay such interest. From that order the committee of bondholders under the first terminal and unifying mortgage and the trustee thereunder bring joint appeals, one granted by this Court, and one by the District Court.[1]

The issue sought to be raised by the above answers was that the responsibility of the debtor for payment of this interest on the certificates was an unsecured claim or, if secured, only to the extent of something less than one-half the amount of interest. The replies challenged this position in toto and further pleaded estoppel by judgment and by conduct.

The situation out of which the above issues arose is as follows. In 1891, the debtor, the subsidiary debtor, and the Tyler Southeastern Railway Company (a Texas corporation) were owners of railway lines which together constituted a major part of the main lines of the principal debtor as then and now existing. February 12, 1891, the debtor executed a single bond for $9,895,000 to the Central Trust Company of New York, "as trustee for the holders of certain certificates hereinafter mentioned". This bond was due November 1, 1989, and bore interest (without coupons) at the rate of 4 percent, payable semi-annually on the first days of May and November. January 13, 1891, the subsidiary debtor executed a similar mortgage to the trust company "as trustee" for $9,445,000. The due date, rate of interest and interest payments being as in the above mortgage. On January 13, 1891, the Tyler executed a similar first mortgage to the trust company "as trustee" to secure a single bond for $660,000, with due date, interest rate and interest payments the same as in the two above mortgages.

The total of the three bonds secured

---

[1] Since the double appeal was simply a precaution to protect jurisdiction and the appeals are consolidated here for hearing and since the question as to which appeal is proper is now unimportant, we shall not expend effort in determining that matter but will enter our order in appeal No. 11,303 and dismiss appeal No. 11,345.

228

by the three above mortgages was $20,000,-000. In the preamble of the above mortgage which was executed by the principal debtor it is recited that the purpose of the indenture is "to provide for and secure in part the payment of the full amount of the principal * * * and of interest" of certain "First Mortgage Certificates" in the aggregate sum of $20,000,000 to be issued by the trust company and countersigned by the president or vice-president of the debtor. These certificates were to be in amounts of $1,000, 'due November 1, 1989, with 4 percent interest, payable semi-annually, represented by coupons. The preamble recited, also, the issuance of the bond for $9,895,000 to provide for the payment of the certificates and that there had been further deposited with the trust company, as trustee, and for the same purposes the above bonds for $9,445,000 of the subsidiary debtor and of $660,000 of the Tyler Southeastern Railway Company.

Also, upon the same dates of the first mortgages, above, each of the three parties executed a second mortgage for single bonds of less amounts, aggregating $10,-000,000, which were similarly utilized to secure an aggregate issue of "Second Mortgage Certificates" to the same amount.

On January 1, 1912, the principal debtor executed a first terminal and unifying mortgage securing coupon bonds of an aggregate limit of $100,000,000, payable January 1, 1952, with interest at 5 percent, payable semi-annually.

No interest has been paid since initiation of these debtor proceedings upon any of the above obligations, except the interest upon the first mortgage certificates which have been paid semi-annually under the order above mentioned.

In this situation the claim of the trustee and of the protective committee under the terminal and unifying mortgage is that the principal debtor is liable upon its first mortgage only to the extent of the interest earned by it up to 4 percent upon the amount of the bond secured by *that* mortgage and that as to any further amount of payment on the interest due on the certificates the holders thereof must look to the earnings of the subsidiary debtor and the Tyler Southeastern, respectively, for interest upon the bonds secured by their respective mortgages and that the guaranty of the principal debtor of the payment of interest by those two companies is not se-cured by its mortgage and constitutes no more than an unsecured obligation. If this contention be true it would, of course, be necessary to segregate and determine the earnings of the three roads and to ascertain that the net earnings of each, separately, was sufficient to meet the interest obligation on the respective bonds before the trustee would be authorized to pay this interest. Therefore, the main issue is whether the first mortgage of the principal debtor covers payment of the full interest on the entire issue of first mortgage certificates.

Before reaching this main issue we are met by three contentions, any one of which, if sound, would determine this case without an examination of the merits of the main issue above stated. These three issues are as follows: (I) estoppel by judgment; (II) estoppel by conduct; and (III) lack of power to make such guaranty because of certain statutory provisions of the State of Missouri, under which State the principal debtor is incorporated.

## I. Estoppel by Judgment.

Appellees rely upon the above order of April 21, 1936, authorizing the trustee to pay the interest due May 1, 1936, and semi-annually thereafter, until further order of the court, as being res judicata of the above main issue here. Appellants seek to avoid such conclusion by claiming that the present issue as to debtor's first mortgage was not involved in the above order and that the present proceeding for payment of the interest coupons due May 1, 1938, is a different proceeding so that the doctrine of res judicata does not apply. The petition of the trustee upon which the order was made sets forth that the payment of such interest, in so far as the subsidiary debtor and the Tyler Southeastern are concerned, "is guaranteed by the principal debtor". It in nowise offers the issue or even suggests the issue that such guaranty is supported by the mortgage of the principal debtor. The main tenor of the petition is that the interest on May 1, 1936, will shortly become due; that default in payment would mature the entire outstanding indebtedness; that the value of the property covered by the "mortgages" is largely in excess of such indebtedness, and that it is to the best interests of the trust estate that such interest be paid on May 1, 1936, and thereafter "during the pendency of this proceeding unless by fur-

ther order entered herein, this court shall direct otherwise." So far as this record shows, no pleadings of any other character were filed and no opposition or issue framed before the trial court. So far as the record shows the order was entered by default. Nor does the order itself do more than state the submission of the petition, the proof of notice and the instruction to the trustee to pay the interest due May 1, 1936, and thereafter "unless by further order entered herein this court shall direct otherwise." From this showing it cannot be said that the main issue sought to be presented here was in any form presented to, considered or determined by the court in making the above order. The most which can be said is that such issue might have been then presented and determined. In this situation appellees are, of course, driven to rely upon the general rule, as to res judicata, that not only are all issues actually presented and determined foreclosed but also all such as might have been.

Therefore, determination of this particular contention depends upon the soundness of appellants' position that, although such issue might have been determined, since it was not presented and determined the order is not res judicata because the present proceeding is a different one. The position of appellants is sound. It is supported directly by Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195.[2] Also, see, Davis v. Brown, 94 U.S. 423, 24 L. Ed. 204. In the Cromwell case there had been a prior suit on bonds and interest coupons issued by the County of Sac and recovery denied on the ground that the bonds were fraudulently issued and plaintiff was not an innocent holder because he had not shown payment of consideration for the bonds. That suit was brought upon other coupons of the same bonds and the court held the earlier determination did not preclude plaintiff showing that he had paid consideration for the coupons then in suit and was, therefore, an innocent holder for value. We are unable to

distinguish that case from the present. The rule in Missouri seems to be the same. Scheer v. Trust Co., 330 Mo. 149, 49 S.W.2d 135; Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629; State ex rel. St. Joseph Water Co. v. Eastin, 278 Mo. 662, 213 S.W. 59. Here the order of the court was a continuing order only in the sense that it was such until further order of the court. The present proceeding is based upon a further order of the court affecting the payment of different and later interest coupons. This issue is resolved in favor of appellants.

## II. Estoppel by Conduct.

Appellees urge that appellants are estopped by their conduct in permitting the various payments of interest under the above order without objection. There is no force in this position. The answer thereto is found in the Cromwell case, 94 U.S. at page 356, 24 L.Ed. 195, where the Court states: "Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction."

## III. Authority of the Debtor.

Appellants contend that the debtor had no power under the law of Missouri to mortgage its railroad property and franchises to make good the defaults of another company, whether or not such company was a wholly owned subsidiary. They rely upon Section 2543, Revised Statutes of Missouri 1889, which states the powers of a railroad corporation. Among these statutory powers are the following:

---

[2] The doctrine of the Cromwell case has been repeatedly approved and never questioned even where distinguished or where held inapplicable. See Virginia-Carolina Chemical Co. v. Kirven, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179; Northern Pacific Ry. Co. v. Slaght, 205 U.S. 122, 27 S.Ct. 442, 51 L.Ed. 738; Dennison v. United States, 168 U.S. 241, 18 S.Ct. 57, 42 L.Ed. 453; Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L. Ed. 202; Roberts v. Northern Pacific Railroad Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873; Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S. Ct. 733, 39 L.Ed. 859; Johnson Steel Street Rail Co. v. Wharton, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429; Bissell v. Spring Valley Township, 124 U.S. 225, 8 S.Ct. 495, 31 L.Ed. 411.

"from time to time to borrow such sums of money as may be necessary for the completion, equipment or repair of their railroad, or for the funding of any floating debt, or for the making of any addition or extension thereto authorized by their charter, or for the making connection with any bridge by tunnel or otherwise; and for any or all of the purposes above named, may issue and dispose of their bonds for any amount so borrowed, and may mortgage their corporate property and franchise, or any part thereof, to secure the payment of any debt contracted by the company for the purposes aforesaid, or any one of them: Provided, that the entire amount of the bonded indebtedness of said corporation shall never exceed the amount of its authorized capital, nor shall such corporation increase its bonded indebtedness except for the purposes and in the manner provided in section 2499."

The exception in 2499 referred to in the preceding quotation is as follows: "* * * except that any railroad company may issue its bonds in excess of its capital stock for the purpose of constructing or acquiring another railroad, which shall connect with the railroad of the company issuing such bonds, but the bonds so issued in excess of its capital stock shall not exceed the authorized capital stock of the company whose road is constructed or acquired with the proceeds thereof, and shall be secured by mortgage on the railroad franchises and property constructed or acquired with the proceeds thereof, or by the deposit as collateral security of the first mortgage bonds of the railroad constructed or acquired with the proceeds thereof."

The testimony here shows that the money paid for the first mortgage certificates was paid to and used by the principal debtor. The first mortgage of the debtor recites that the certificates are issued "for the purpose of providing for the acquisition, completion and equipment of the railways and property hereinafter described." Such usage would seem to be within the statutory power.

IV. Construction of the First Mortgage.

■ The determination of the three issues above discussed brings us to a consideration of the merits of the main issue, which is whether the guaranty of payment of the entire interest on the first mortgage certificates is supported by the first mortgage of the principal debtor. This requires examination of the mortgage but not an extended analysis thereof. The mortgage itself is quite lengthy, setting forth the purposes, the form of certificate, the form of the bond for $9,895,000, the property conveyed, and many other provisions, most of which are common to railroad mortgages. It is sufficient to state only some generalities and two particular provisions of the mortgage. The purposes are clear. The purpose was to procure $20,000,000 for the use of the principal debtor. To secure repayment of this money and payment of interest it was necessary to mortgage the properties of the entire system. Because there were three separate corporate entities, each owning a different part of the system property, it was necessary to have the three separate mortgages—one by each company. In order to place all of the property back of each and all of the indebtedness intended to be created the plan following was pursued: Each company executed a mortgage to secure the payment of a single bond in a specified amount. The aggregate of those amounts made up the sum to be borrowed by the principal debtor. On January 13, 1891, the subsidiary debtor and the Tyler Southeastern executed its respective bond and mortgage. About a month later the principal debtor did likewise. In the last instrument the plan is set forth of constituting the Central Trust Company, as trustee, to issue First Mortgage Certificates, to be countersigned by the principal debtor in the aggregate amount of $20,000,000 with the deposit with such trustee as security for the certificates of the above separate bonds secured by the separate mortgages. That plan and that purpose is clearly stated in the First Mortgage of the principal debtor. In that instrument the habendum clause conveys the property of the principal debtor to the trust company "in trust, to secure the payment of the said bond hereinbefore particularly described and of the interest to become due thereon, according to the tenor of said bond and of this indenture *and for the other uses and purposes and upon the terms and conditions, and subject to the covenants and agreements expressed in this indenture.*"[3] Article I of the mortgage contains the provision that "all such First Mortgage Certificates issued hereun-

---

[3] Italics in quotations in this opinion are supplied.

der and in pursuance hereof shall be entitled to equal and pro rata payment *and security hereunder* without any preference, priority or discrimination whatsoever." Article IX provides that the bonds of the three companies " * * * shall be held by the trust company in trust for the payment to the holders of said First Mortgage Certificates of the amount of the principal and interest therein specified * * *." Article XI is as follows:

"Article XI.—The Railway Company guarantees the due and punctual payment to the Trust Company for the benefit of the holders of said First Mortgage Certificates hereunder, of the principal and interest of said bond of the St. Louis Southwestern Railway Company of Texas and of said bond of the Tyler Southeastern Railway Company, according to their tenor, and the Railway Company covenants and promises, that in case either of the last mentioned companies shall fail to pay in full the principal or interest of its said bond as and when such principal or interest shall become due or payable it, the Railway Company, will forthwith pay to the Trust Company for the benefit of the holders of said First Mortgage Certificates, the amount of such principal or interest which such company may fail to pay on its said bond. The Railway Company further covenants that the full amount of the principal of said First Mortgage Certificates, with interest at the rate of four per cent. per annum, shall be payable thereon, without any deduction for any United States, State or municipal taxes which the Railway Company or Trust Company may be required to deduct therefrom, the Railway Company hereby agreeing to pay such tax or taxes. No such payment by the Railway Company of interest on either of said bonds shall operate as subrogating the Railway Company to the lien of the mortgage securing the bond on which such payment was made as against the Trust Company hereunder, but the lien of such mortgage shall cease as to the interest so paid by the Railway Company."

Article XVIII is as follows: "XVIII.—Upon payment in full of the principal and interest of the hereinbefore recited bond of the Railway Company when and as the same shall become due and payable, the estate, right or title of the Trust Company, as Trustee hereunder, in or to the Railways and appurtenances hereby conveyed by the Railway Company to the Trust Company shall cease and determine, and the Trust Company shall, if required by the Railway Company, and its cost and expense, enter upon the records satisfaction of the lien created by this mortgage upon said railways and appurtenances; but this Indenture and the trusts hereby created for the benefit of the holders of said First Mortgage Certificates as to said bonds of the St. Louis Southwestern Railway Company of Texas and the Tyler Southeastern Railway Company, and the stock in said last-mentioned companies, and the covenants, agreements and guarantees of the Railway Company in respect of said bonds and said First Mortgage Certificates and all other provisions herein contained shall continue in full force and virtue until the payment in full of the principal and interest of said First Mortgage Certificates."

The above provisions are sufficient to show a stated intention to place the mortgaged property back of the payment of the entire interest and principal of these certificates. While some of the language quoted might be as consistent with the theory of a security only in the amount of the bond executed by the principal debtor, yet it is equally consistent with the theory of security for all of the certificates and for both principal and interest thereof. When the provisions of Articles XI and XVIII are considered it is difficult to avoid the conclusion that the security of the mortgage made by the principal debtor was intended to cover payment of all certificates and all interest thereon. Article XI is a clear covenant with the security holders that the principal debtor will see to the payment of the principal and interest of the bonds of the two other railway companies and will itself make such payment if either of those companies shall fail so to do. Not only is the conveyance in the habendum clause "subject to the covenants and agreements expressed in this indenture" (one of which is that contained in Article XI) but by Article XVIII, although the principal debtor shall pay in full the principal and interest of the bond secured by its mortgage, yet: "this Indenture and the trusts hereby created for the benefit of the holders of said First Mortgage Certificates as to said bonds of the St. Louis Southwestern Railway Company of Texas and the Tyler Southeastern Railway Company, and the stock in said last-

mentioned companies, and the covenants, agreements and guarantees of the Railway Company in respect of said bonds and said First Mortgage Certificates and all other provisions herein contained shall continue in full force and virtue until the payment in full of the principal and interest of said First Mortgage Certificates."

"This indenture" is the First Mortgage. It is difficult to understand why this mortgage shall remain in force "until the payment in full of the principal and interest of said First Mortgage Certificates", even though the bond for $9,895,000 and interest thereon of the principal debtor is completely paid, unless the indenture is intended to secure payment of the full principal and interest of such certificates.

Upon the ground that the first mortgage of the principal debtor is security for the full payment of interest upon all of the certificates, the order from which these appeals are taken should be and is affirmed.

