# DENNISON *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 84. Argued and submitted November 2, 1897.— Decided November 29, 1897.

To entitle a supervisor of elections to a valid claim against the Government, he must make it appear that the services performed were required by the letter of Rev. Stat. § 2020 and § 2026, or were such as were actually and necessarily performed in the proper execution of the duties therein prescribed, and that his charges therefor are covered by Rev. Stat. § 2031, or, if not fixed in the very words of that section, that by analogy to some other service, he is entitled to make a corresponding charge.

If the services were only performed for his own convenience, or were manifestly unnecessary or useless, even if they be such as he judges proper himself, they cannot be made the basis of a claim against the Government.

It is *held* that the applicant, a chief supervisor, should have been allowed for drawing instructions to supervisors, and, in the absence of proof to the contrary, for the full amount of his claim for auditing claims of and drawing pay rolls of supervisors, and certifying the same to the marshal ; and all the other claims, enumerated in the opinion of the court, are disallowed.

The ruling in *Cromwell* v. *Sac County,* 94 U. S. 351, that when a second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered, affirmed and applied.

THIS was a petition by the Chief Supervisor for the Northern District of New York for fees and disbursements connected with the general election of 1890, amounting to $16,612.79, of which $2752.60 were disallowed by the Treasury Department; for like fees and disbursements connected with the general

election of 1892, amounting to $18,998.94, of which $2581.75 were disallowed; and also for fees connected with the examination of witnesses to show that certain supervisors, who had been appointed in the city of Troy to attend a Congressional election in 1888 had been deterred from discharging their duties by violence, or threats of violence, by disorderly persons. This account amounted to $624.65, of which $402.65 were disallowed.

The petition alleged that all these accounts had been approved and allowed by the District Court.

Upon a finding of facts, which do not differ materially from those set up in the petition, the Court of Claims directed a judgment in favor of the petitioner for $678.10, whereupon petitioner appealed to this court.

*Mr. Richard Randolph McMahon* for appellant.

*Mr. Attorney General*, for appellees, submitted on their brief, on which were *Mr. Assistant Attorney General Pradt*, and *Mr. Felix Brannigan.*

MR. JUSTICE BROWN delivered the opinion of the court.

The duties of Chief Supervisors are prescribed by statute. Rev. Stat. § 2020 and § 2026. Their fees are also fixed by statute. § 2031. To entitle a supervisor to a valid claim against the Government he must make it appear that the services performed were required by the letter of the former sections, or were such as were actually and necessarily performed in the proper execution of the duties therein prescribed. It must also appear that his charges therefor are covered by the latter section, or if they are not fixed in the very words of that section, that, by analogy to some other service, he is entitled to make a corresponding charge. If the services are only performed for his own convenience, or are manifestly unnecessary or useless — even if they be such as he judges proper himself — they cannot be made the basis of a claim against the Government.

The petitioner in this case made a claim for his services in the general elections of 1890 and 1892 in the aggregate sum of $35,611.73, of which but $4265.13 appear to have been for disbursements. Of this very large amount there was disallowed but $5334.35, an amount which was further reduced by the judgment in his favor of $678.10 to $4656.25, which is the amount in dispute here.

If the petitioner be entitled by law to the further sum claimed for what are in the main clerical services, he must receive judgment for them; but as the dates of the approval of his accounts show that his services did not extend over a period of more than six months, he has at least no reason to complain of the illiberality of the Government.

The approval of the District Court goes only to the facts that the services were rendered as stated in the accounts, and that in certain matters of discretion, the discretion was properly exercised. *United States* v. *Jones,* 134 U. S. 483 ; *United States* v. *Barber,* 140 U. S. 177, 179. Neither of these cases requires the allowance of charges obviously unnecessary.

The items disallowed by the court below will be considered in their order:

1. — Item 4. Drawing instructions to supervisors, relative to their duties, 106 folios at 15 cents a folio, $15.90. As this charge was expressly allowed in *United States* v. *McDermott,* 140 U. S. 151, 154, ¶ 5, and in *United States* v. *Poinier,* 140 U. S. 160, 163, ¶ 3, we do not understand why the item was rejected. Apparently it was an oversight. The Attorney General concedes the allowance in his brief.

2. — Item 5. Making copies of applications from different cities for the appointment as supervisors, to be annexed to the reports made to the judge, 1950 folios at 15 cents a folio, $279.50. Rev. Stat. § 2012 requires that the court, when opened, shall proceed to appoint and commission under the hand of the judge two resident citizens of each election precinct, who shall be of different political parties, etc., as supervisors. Section 2026 seems to contemplate that the judge shall obtain his information as to the competency of the persons receiving these appointments through the Chief Super-

visor, who is charged with the duty of receiving the applications of all persons for appointments to such positions; of presenting such applications to the judge, and furnishing information to him in respect to the appointment of such supervisors. The law does not require or contemplate that the original applications shall be retained by the Chief Supervisor, but rather that they shall be presented to the judge, who may preserve them or not as he sees fit. There is not the slightest necessity for making copies of them. The offices to be filled are purely temporary, and as soon as the election is held and the reports made the supervisors are *functi officio*. The office of the applications is even more temporary than that of the supervisors, since as soon as the appointments are made the applications have served the purpose for which they were intended. To speak of them as the official records of the Chief Supervisor is to dignify them with a title and importance entirely foreign to their real functions. To retain the originals and furnish the judge with copies is only to burden the Government with an utterly useless expense. There is nothing to show that these copies were ordered by the court.

3.— Items 7, 8, 10, 13, 14, 21 and 27 are all of one class, and fall within the same general principle. They are for entering and indexing special letters of instruction to each local supervisor, containing a notice of the supervisor's appointment and general directions with regard to the method of obtaining his commissions or concerning the proper discharge of the duties of his office; some enclosing blank reports to be made of proceedings at the meeting of the boards of registration; others requiring a report of the vote cast; still others notifying the supervisors of the days allowed and the amount due, with special orders requiring them to verify their lists; and similar directions germane to the proper discharge of their functions. The aggregate amount of these items is $1447.65.

We see no reason for entering or indexing these letters of instructions. There was no necessity for making separate memoranda of them — much less copying them or preserving

duplicates. The regular course of business of the office would authorize one to infer that instructions were sent to the local supervisors in each case, and the names in the supervisors' commissions would show to whom these instructions were sent. We held in the case of *United States* v. *McDermott*, 140 U. S. 151, 154, that the Chief Supervisor was entitled to fifteen cents per folio for preparing and furnishing proper instructions to supervisors, and that he was also entitled to the expense of printing copies of such instructions for the use of the local supervisors, but that he was not entitled to a folio charge for each copy so furnished.

It is equally clear that he is not entitled to a charge for entering and indexing them, as they are no proper part of the records of his office. Letters of instructions are not "records" in any sense of the word.

4. — Items 9, 22, 23 and 24 are for entering and indexing special reports of the supervisors of election, either of the proceedings at the meeting of the board of registry or of other matters connected with the registration, election or compensation of the supervisors.

Petitioner is doubtless entitled to a fee of ten cents under Rev. Stat. § 2031, for filing and caring for each of these special reports, which are a proper part of the records of the office, but we think the entering and indexing them were an unnecessary burden upon the Government. These items are, therefore, disallowed.

5. — Items 11 and 25. Entering and indexing reports on presentation of applications for the appointment of supervisors of election, which reports furnished information to the judge in respect to the qualifications of each applicant, $355.95 and $101.10. These reports are made to the judge, and are no part of the records of the Chief Supervisor's office. By section 2031, the charge for "entering and indexing" can only be made where the papers are a part of the records of the office. In view of the temporary character of these appointments, the word "record" should receive a narrow construction, and be limited to such documents and entries as might subserve some useful purpose in the future. The office of

these reports is performed when they are submitted to the judge and the appointments are made. If he deems them of any importance, their custody belongs to the court and not to the supervisor. The copying and entering of them upon his records can be of no possible utility. It belonged to the court to determine for itself what should be done with the originals.

6. — Item 12. Entering and indexing pay rolls of supervisors of election and certifying the same to the marshal, $76.95. It appears to have been the duty of the Chief Supervisor, under the instructions of the Attorney General, to audit and certify the amount due the supervisors, but we see no necessity for preserving copies of them in the records of the supervisor's office. The charge in this case is not for auditing and certifying the amounts, but for *entering*, by which we understand *copying*, and indexing the pay rolls, which we consider an unnecessary burden.

7. — Items 15 and 28 include charges to the amount of $630.60, for drawing oaths of supervisors, two folios. The controller allowed one folio for each oath. The oath contained the statement formerly required by section 1756, that the affiant had never borne arms against the United States, etc., which was repealed by the act of May 13, 1884, 23 Stat. 21, the repealing act providing that in the future every person appointed to any office should take the oath prescribed by section 1757. The oath thus prescribed is less than one folio in length. The case is evidently not one for a liberal construction of the statute. These items are accordingly disallowed.

8. — Item 17. Auditing claims of and drawing pay rolls of supervisors of election for their claims for service, and certifying the same to the marshal for payment, 773 folios, of which the controller disallowed 531 folios, the difference being $81.60. There is no finding in connection with this item as to whether the count of the supervisor or of the controller was correct. Nor is any reason given for the disallowance of the 531 folios. As the account was verified by the oath of the claimant that each and every service charged therein had been necessarily performed, and as the District Court allowed the item, we

think it was incumbent upon the Government to show that the claimant charged for an excessive number of folios. We are therefore of opinion that this item should be allowed.

9. — Item 18. Entering and indexing applications of persons applying to be appointed supervisors of election, etc., $286.95. This was not a charge for *filing* recommendations for appointments or for indexing *appointments*, which charges were allowed in *United States* v. *Poinier*, 140 U. S. 160, but for entering and indexing the applications. As we have already held that the law does not contemplate that these papers shall become the records of the office, the service was evidently wholly unnecessary.

10. — Items 19 and 20. Entering and indexing the oaths of supervisors and special deputy marshals, of which the controller allowed a part and disallowed a larger part, the difference being $671.70. It does not appear why the controller allowed less than one-half of these items; but as we think the whole charge should have been disallowed, it is unnecessary to seek an excuse for disallowing a moiety. It is true that Rev. Stat. § 2027 requires the commissioners, with all due diligence, to forward to the Chief Supervisor all oaths of office administered to any supervisor of election, in order that the same may be properly preserved and filed. They thereby become a part of the records of the Chief Supervisor's office, and he is properly entitled to a fee for filing the same; but it does not, therefore, follow that he is entitled to a separate fee for entering and indexing them. As we observed in *Poinier's case*, page 162, " it does not, however, follow that every paper which the law authorizes to be filed must, therefore, be recorded or copied. To entitle a paper or document to be recorded, it should have some permanent value. Where the original paper is preserved or filed, such for instance as the pleadings, exhibits, depositions or other papers in a common suit at law or equity, no necessity ordinarily exists for its being recorded. As a charge of ten cents for filing these informations was allowed by the department, the exception to this item for recording and indexing is, therefore, sustained." The same remarks are applicable to the charge in this case.

The petitioner was entitled to ten cents for filing and caring for every paper to be filed by him; but he does not thereby become entitled to a separate fee for entering and indexing them.

11. — Item 26. Making, entering and indexing records, such as mail lists containing supervisors' names and post office addresses, with columns for checking matter sent out by mail, and also receiving lists, etc. These lists are obviously no part of the record, and the item should be disallowed.

12. — Item 31. Entering and indexing certain depositions and evidence taken in the matter of the claim made that certain supervisors had been unable to discharge the duties of their office by reason of violence and threats of violence, $172.35. For the reasons already stated with reference to the items for entering and indexing oaths, we think that the supervisor was entitled to a charge of ten cents for filing these depositions, but he is not entitled to the large charge of $172.35 for entering and indexing them. This charge is also disallowed.

The underlying vice of the petitioner's theory throughout this whole account consists in the assumption that every paper or document which comes into or issues from his hands, or is prepared by him officially, even though it be for a purely temporary purpose, constitutes an official record, and that it is within his discretion that every such paper shall be entered (copied) in durable books and indexed in a permanent form. This is not the case. Even in courts of justice, which are a permanent feature of every civilized government, the judgment record which the clerk is authorized to enter in a book kept for that purpose, does not include every paper found in the files of the case, nor even the depositions of witnesses, but is confined to the pleadings and proceedings necessary to make up a complete history of the suit. Much more is this the case with the records of the Chief Supervisor, which exist only for a temporary purpose, and after a year or two lose practically their entire value. It is true that the Chief Supervisor is entitled to exercise a certain discretion as to what papers he shall enter upon a permanent book, but to enter a

hundred letters, each of which must be substantially a copy of every other, excepting the address, is so manifestly an abuse of his discretion that no court should tolerate it for a moment. It is not for us to determine what are the records which should be entered and indexed. It is sufficient to say that, for the purposes of this case, we have no difficulty in determining what are not.

The plea of *res judicata*, arising from the fact that the claimant brought an action in 1887 in the Court of Claims to recover for various items of service of the same nature and description as those claimed in this case, and that the court found in his favor and rendered judgment against the United States for the amount claimed, is not well taken. There is no finding of fact in connection with this plea, and we can only judge of what the issue was by reading the opinion of the Court of Claims. 25 C. Cl. 304. From this opinion it appears that the items of the account were not passed upon in detail, but that the court rendered judgment in favor of the claimant upon the ground that the approval of the account by the District Court, under the decision in *United States* v. *Jones*, 134 U. S. 483, threw upon the Government the burden of disproving the correctness of the several items. That the court did not approve the items as charged is evident from its statement that " on the argument it was maintained by the counsel for the government that the claimant had failed to establish the *quantum* of his services and expenditures by competent evidence, and, as to many of the items, such is the opinion of the court."

Further than this, however, the suit under consideration is not for the *same* items as those allowed in the former case, but for *similar* items, and the case falls within our ruling in *Cromwell* v. *Sac County*, 94 U. S. 351, that " where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." There was no issue raised and decided in the former case as to the legality of the several items considered separately, but such issue is clearly raised in this case.

While we think the judgment of the Court of Claims was correct with respect to all the items involved in this case, with the exception of two, the aggregate amount of which is $97.50, for its error in respect to those two the judgment will have to be varied by increasing the same from $678.10 to $775.60 and subject to such increase it is, in all other respects,

*Affirmed.*