## MENDEZ v. BOWIE et al.

### No. 3578.

Circuit Court of Appeals, First Circuit.

March 19, 1941.

Henry G. Molina, of San Juan, P. R., for appellant.

E. T. Fiddler, of San Juan, P. R. (Fiddler, McConnell & Gonzalez, of San Juan, P. R., on the brief), for appellees.

Before MAGRUDER and MAHONEY, Circuit Judges, and HARTIGAN, District Judge.

MAHONEY, Circuit Judge.

The appeal in this case is from a decree of the United States District Court for Puerto Rico dismissing the bill of complaint. The suit, entitled a bill for denial of servitude, was filed January 17, 1939, by the plaintiff, owner of certain land in Puerto Rico known as Mercedes. In the complaint it was alleged that on May 22, 1917, the plaintiff's father, Manuel Mendez Dueno, who was then owner of the Mercedes land and other parcels, by deed No. 133 granted a perpetual right of way for a railroad line upon and across all and every one of the designated parcels in favor of the property known as Central Juncos as dominant tenement, without any restrictions whatsoever, and that the defendants, now owners of the dominant tenement, have been wrongfully using the said right of way by using it for the benefit of lands other than the dominant tenement. It prayed for a decree denying to the defendants a right of way across the Mercedes land to and from, and for the benefit of, any property other than the dominant tenement, for a perpetual injunction enjoining them from making said wrongful use of the right of way, and for an accounting of the rents and profits.

The defendants in their answer denied that the right of way was for the sole benefit of the Central Juncos property and alleged that it was granted without limitation as to the properties that might be benefited. They denied that the use was wrongful, and alleged that it was authorized by deeds Nos. 132 and 133 of May 22, 1917. They further averred that the plaintiff was aware of the use which had been made of the right of way for many years and had made no objection thereto, and that the right of way has no rental value.

In addition the defendants filed three separate defenses. The trial court struck out the first defense. It allowed the second and third to remain. The second was not considered by the court below nor was it urged before us. The third separate defense alleged that on or about June 1, 1935, the defendants filed in the federal district court for Puerto Rico a bill to quiet their title to a portion of the right of way of the said railroad over property of the plaintiff known as Islote, and that the plaintiff herein filed a cross-complaint

alleging that the defendants herein had no title whatsoever to a right of way over that property there involved, and praying that the present defendants be enjoined from using or traversing the said property. It is further alleged that the court entered a final decree on January 14, 1936, adjudging that the defendants herein had a perpetual right of way over Islote, the land there in question, under deeds Nos. 132 and 133, and enjoined the plaintiff from interfering with the defendants' use. This decree was affirmed by this court in Mendez v. Eastern Sugar Associates, 1 Cir., 1937, 89 F.2d 399. The defendants claim that by said decree the issues in this suit were finally adjudicated and that the plaintiff is barred from maintaining this suit.

The district court found that The Juncos Central Company formerly owned the sugar mill known as Central Juncos and considerable farm land in the vicinity of the mill, including the property known as Mercedes. It had, some time prior to 1910, established a railroad line from Rincon between the towns of Caguas and Gurabo running in a northeasterly direction over the Mercedes property, at that time owned by The Juncos Central Company, and several other parcels of land, to the sugar mill Central Juncos, and beyond the Central Juncos in an easterly direction branching out later into two lines, one of which ended near Las Piedras and the other at Mascalbo. It had other small branches. For a long time prior to 1917 and after it was used to haul sugar cane to be ground at Central Juncos, to haul coal to the mill, and to haul sugar and fertilizer to the farms located near the railroad.

On May 22, 1917, The Juncos Central Company sold Mercedes and several other parcels of land to the plaintiff's father, Manuel Mendez Dueno. The deed, No. 132, recited that the purchaser "establishes and grants in favor of The Juncos Central Company, over all his rural properties, a perpetual right of way for the railroad lines of said corporation. The said Mr. Mendez Dueno for himself and as attorney in fact for his wife agrees and obligates himself to grant to the Juncos Central Company a right of way for railroad lines, over his properties Caloca, San Luis, Rincon [Mercedes] and Emilia, which easements shall be evidenced by another deed."

On the same day, Manuel Mendez Dueno, by Deed No. 133, granted The Juncos Central Company an easement for a rail-

road right of way over Mercedes and several other parcels of land as follows:

"Fourth: The parties having agreed to constitute a servitude for the passage of a railroad they carry out the contract and execute this deed in the manner expressed in the following clauses:

"First: Manuel Mendez Dueno for himself and as attorney in fact for his wife, Micaela Rios Morales, grants to The Juncos Central Company, its successors or assignees, a perpetual right of way for a railroad line through, upon and across all and every one of the parcels hereinbefore described in paragraph two of this deed, * * * and the parties state that in all of the described properties the railroad has been installed for a long time. * * * The aforesaid servitude, as has been stated, is perpetual in character and is constituted in favor of the rural property [Juncos 'Central property] described in the third paragraph of the expositive part (of this document) as dominant tenement, and which is owned by The Juncos Central Company, the cars and engines of The Juncos Central Company being permitted in virtue of said servitude to run freely over the roads established without any restriction whatsoever, and said railroad may be repaired and conserved as required by the necessities of the service."

After this deed, the right of way over Mercedes continued to be used by the Juncos Central Company for many years in substantially the same manner that it had been used theretofore.

In 1928 the United Porto Rican Sugar Company acquired substantially all the assets of The Juncos Central Company and of several other sugar companies and connected the railroad systems of these companies into one system. That company and the defendants, its successors, have used the connected railroad line which now runs from Caguas east to the sea at Humacao Playa, to haul cane not only to the mill on the dominant tenement, but to all their various mills, to haul sugar from these several mills to Humacao, and to haul fertilizer and other materials from Humacao Playa west to these mills and other properties.

It was further found that Manuel Mendez Dueno must have been familiar with the use made of the right of way over Mercedes in 1917 when he acquired the property from The Juncos Central Company and granted the latter the easement for the railroad. His son, the plaintiff, having lived in plain view of the railroad since 1928, was also found to have had knowledge of the use. The plaintiff never complained of the use of the right of way over Mercedes until about the time this suit was brought, and the court found that there was no showing that any of his predecessors in title had ever raised any question as to the use of the right of way.

In 1917 Manuel Mendez Dueno sold the parcel Mercedes to Antonio Roig, who in 1920 sold it to the plaintiff and Manuel Mendez, his brother, as partners. In 1935, upon the dissolution of the partnership, the plaintiff became the sole owner of Mercedes.

The court also found that on June 1, 1935, the defendants in this suit brought suit in the federal district court for Puerto Rico against the plaintiff and his brother to quiet title to the right of way for the railroad here involved over a parcel of property known as Islote. The right of way there in question was granted by the same deed and under the same terms as the one here involved. The use then made of that right of way was the same as the use made at the present time on that right of way and the right of way over Mercedes here involved.

The present plaintiff denied that the present defendants had any right of way over the property known as Islote, and he and his brother filed a cross-complaint praying that the present defendants be enjoined from using or traversing in any way the alleged right of way across Islote, and that the court determine and allow to the plaintiff the damages caused by the defendants because of the use of the alleged right of way. On January 14, 1936, a final decree was entered in favor of the present defendants declaring that they had a permanent easement across the Islote property and enjoining the plaintiff from interfering with the defendants' use of such right of way. As previously stated, this decree was affirmed by us in Mendez v. Eastern Sugar Associates, supra. The court below in the present case found that in that earlier suit the plaintiff did not complain specifically of the particular use of which he now complains, but objected to any use of the right of way.

After finding the facts as above, the district court dismissed the complaint on the ground that the proper construction of Deed No. 133 gave to the defendants a

right of way across Mercedes which was unrestricted and need not be used solely for the benefit of the dominant tenement expressed in the deed. No ruling was made on the defense of res judicata. The plaintiff has appealed.

After the appeal had been filed the plaintiff sold the Mercedes property. One condition of the contract of sale was that it was agreed that the plaintiff might continue all the proceedings on the appeal of this case, that the purchaser would incur no liability therefor, and that any sum obtained by the plaintiff from the defendants was to be the property of the plaintiff. The defendants filed a motion to dismiss the appeal on the ground that the plaintiff has no further interest in the property involved.

One further fact not adverted to by the district court should be set out. In December, 1937, the plaintiff brought suit in the insular district court to enjoin the present defendants from wrongfully using the right of way over the Islote property for the benefit of property other than the dominant tenement. This suit was removed to the federal district court where the complaint was dismissed on the ground that the prior suit, Mendez v. Eastern Sugar Associates, supra, was res judicata. This decision was affirmed by this court in Mendez v. Baetjer, 1 Cir., 1939, 106 F.2d 163. This court held that the cross-complaint filed by the present plaintiff in the first case raised the question of the right of the present defendants to any use of the right of way, and that since the second suit was between the same parties about the same right of way over the same land acquired by the same deed, the first suit was res judicata as to all questions of use which could have been raised under the pleadings in the first suit.

There are three questions before this court. Has the plaintiff lost his right to continue this appeal by reason of the sale of the Mercedes property? Are the prior decisions of this court mentioned above res judicata as to this action? If these two questions are answered in the negative, the question then arises whether under Deed No. 133 the use which the defendants are making of this right of way is unlawful.

We do not believe the plaintiff lost his right to continue this appeal by reason of the sale of the Mercedes property. When this suit was brought the plaintiff asked for an injunction against further alleged misuse of the right of way and for an accounting of past damages. Undoubtedly these allegations provided a proper basis for this court to exercise equitable jurisdiction. By the sale of the property a plaintiff loses his right to an injunction against the defendants. But he is still entitled to damages, if any, for past alleged wrongs connected with the property. Doak v. Hamilton, 4 Cir., 1926, 15 F.2d 774, 776, 778; Krentler-Arnold Hinge Last Co. v. Leman, 1 Cir., 1926, 13 F.2d 796. Cf. Koehler v. New York Elevated R. R., 1899, 159 N.Y. 218, 53 N.E. 1114; Welde v. New York & H. R. R., 1st Dept. 1905, 108 App.Div. 286, 95 N.Y.S. 728.

It is apparent from the provisions in the contract of sale that the purchaser of Mercedes does not wish to become involved in this litigation and that the plaintiff in no way transferred his right to past damages. The case is analogous to Stokes v. Manhattan R. R., 1st Dept.1900, 47 App.Div. 58, 62 N.Y.S. 333. In that suit the plaintiff sued the railroad for an injunction and damages to his property because of the trains running over it. While the action was pending, the plaintiff sold the property, and a motion was granted making the grantee an unwilling defendant. On appeal, the order granting this motion was reversed. The court set out the law as follows, 47 App.Div. at 60, 61, 62 N.Y.S. at 335:

"The principle which obtains in this case is entirely clear. The owner of the premises, as long as he retains the title, has an interest in restraining the trespass which affects the value of his property. He has also a right to bring an action for damages he has sustained by reason of these trespasses. The right of action for an injunction is an incident of the ownership of the property. The right of action for damages is personal to the owner and still remains with him after he has disposed of the property; and when he has ceased to be the owner it is all there is left of his cause of action, for, as he has no further interest in the premises, he has no right to ask for an injunction but for the damages he has already suffered he may still maintain his suit, and, if he has already begun a suit for an injunction and damages, while he is no longer entitled to the injunction because he has ceased to be the owner, he may still maintain the ac-

440

tion for the damages. Pegram v. Railroad Co., 147 N.Y. 135, 41 N.E. 424. As he can recover in that action nothing but the damages, all of which belong to him when collected, it is not perceived how the presence of any other party is necessary for a final determination of the rights which can be adjudged in that action. The grantee who has taken title to the premises alone has an interest in obtaining an injunction. That right belongs to him exclusively. Nobody else has any interest in it. No one else can control it. Pappenheim v. Ry. Co., 128 N.Y. 436, 28 N.E. 518, 13 L.R.A. 401 [26 Am.St.Rep. 486].

"He may bring a suit to enforce it; he may negotiate with the trespasser to stop the trespass, or to pay him for the privilege of continuing it; he may sue for damages for it from time to time, without any effort to restrain its further commission; or he may, if he sees fit, stand by and permit the commission of the trespass without any effort to restrain it or recover damages for it. Whatever he may do, it does not affect the right of the former owner to sue for his damages, and that right can be determined without his presence, and, consequently, he is not either a necessary or proper party, within section 452 of the Code of Civil Procedure."

■ The remaining right in the plaintiff is one for damages or an accounting which ordinarily would be had at law. However, it is not necessary to send the case back for new proceedings since equity will give complete relief where it originally had jurisdiction "even though the court is thereby called upon to determine legal rights that otherwise would not be within the range of its authority". McGowan v. Parish, 1915, 237 U.S. 285, 296, 35 S.Ct. 543, 548, 59 L.Ed. 955; Doak v. Hamilton, supra; Krentler-Arnold Hinge Last Co. v. Leman, supra.

The lack of necessity to dismiss the appeal is also shown by the liberality of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Rule 2 provides for only one form of action, known as a "civil action", rather than any distinction between law and equity. Rule 25(c) provides that "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

The plaintiff clearly is entitled to a hearing on his claim for past damages for alleged misuse of the right of way involved. This right belongs to no one else and can be asserted by no one else. Since there was equitable jurisdiction when the suit was brought and also since the distinction between law and equity has been abolished in the federal courts, we hold that the plaintiff is still entitled to continue this appeal irrespective of the sale of the property involved.

■ As for res judicata, the general rule applicable to successive suits between the same parties has long been formulated. The effect of a judgment or decree as res judicata depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also as to every ground of recovery or defense which might have been presented. This latter is to prevent the splitting of a single cause of action and the use of several grounds for recovery under the same action as the basis for separate suits. But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered, and not as to matters or points which might have been litigated and determined. Baltimore S. S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Cromwell v. County of Sac, 1876, 94 U.S. 351, 24 L.Ed. 195.

This general rule is simple and well settled. The difficulty arises in applying it to particular circumstances. In the first suit, the present defendants brought an action to quiet title to the right of way across Islote. The present plaintiff denied that the defendants were entitled to any right of way across Islote and cross-claimed for an injunction preventing the present defendants from making any use whatsoever of the alleged right of way. The court upheld the defendants' right of way across Islote and enjoined the plaintiff from interfering with its use. Mendez v. Eastern Sugar Associates, supra. In the second

suit, the plaintiff, admitting the right of way, sued to enjoin the defendants from an allegedly unlawful use of the right of way across Islote, and for damages for such unlawful use. This court affirmed the dismissal of the complaint on the ground that the suit was between the same parties as to the same cause of action and that, since the question of the extent of the right to use the right of way across Islote could have been raised in the first suit, the decision in that suit was res judicata and prevented the plaintiff from again litigating the extent of the right to use the right of way. Mendez v. Baetjer, supra.

We have no occasion now to reexamine the correctness of our decision in that second suit. Assuming its correctness, it does not stand in the way of an assertion by the plaintiff of his claim in the case at bar.

The present suit concerns the Mercedes property and not Islote. The defendants maintain that the question of wrongful use could have been raised in the first suit; that the second suit held that it was impossible, therefore, for the plaintiff to raise the question as to Islote in the second suit; and that both of these decisions prevent him from raising the same point as to the Mercedes property on the ground that it is the same cause of action. We do not agree. The Mercedes property has never been involved in the prior two suits. It is an entirely different piece of land, and the alleged wrongful use of a right of way over it is a completely different cause of action from an action for such use of a right of way over a different piece of property even though the right of way was given over both properties by the same deed. Roberts v. Northern Pacific R. R., 1895, 158 U.S. 1, 25, 15 S.Ct. 756, 39 L. Ed. 873; United States v. Pan-American Petroleum Co., 9 Cir., 1932, 55 F.2d 753, 781; Southern Oregon Co. v. United States, 9 Cir., 1917, 241 F. 16, 23. See Miller & Lux v. James, 1919, 180 Cal. 38, 44, 45, 179 P. 174, 177. The claim made in this suit is not for the same land involved in the first and second suit but for similar land, and thus falls within the rule that where the succeeding action is upon a different claim, the judgment in the prior action is conclusive only as to those matters raised and decided in the prior litigation. Dennison v. United States, 1897, 168 U.S. 241, 249, 18 S.Ct. 57, 42 L.Ed. 453. No issue was decided in the former cases as to the legality of the extent of use which the defendants have made of their admitted right of way. In the second suit the plaintiff sought to raise such an issue, as to Islote, but the court would not allow it, on the ground that it could have been raised in the first suit which also concerned Islote. Such issue is clearly raised in this case; the plaintiff is entitled at last to an adjudication of that question on the merits.

We come then to the question of the alleged wrongful use of the right of way by the defendants, which the plaintiff has diligently sought to raise. As found by the district court, the defendants make use of the railroad on the right of way to haul sugar cane, sugar, and other materials both to and from mills other than that on the Juncos Central property as well as to and from that mill and property. In brief, the defendants apparently use the railroad unrestrictedly for the purposes of their business without regard to whether the particular use benefits the Juncos Central property, the dominant tenement. The plaintiff maintains that any use other than that for the benefit of the Juncos Central property is unlawful and that he is entitled to any damage he may have suffered because of it. The defendants claim that the deed granting the easement gave them a free and unrestricted use of the railroad, not limited to that which benefits the dominant tenement.

We are thus required to determine the proper construction of the language of Deed No. 133, construed in the light of Puerto Rican law as to servitudes on real property. The crucial portion of the deed recites that the grantor "grants to The Juncos Central Company, its successors or assignees, a perpetual right of way for a railroad line through, upon and across all and every one of the parcels hereinbefore described. * * * *The aforesaid servitude, as has been stated, is perpetual in character and is constituted in favor of the [Juncos Central property] as dominant tenement, and which is owned by The Juncos Central Company, the cars and engines of The Juncos Central Company being permitted in virtue of said servitude to run freely over the roads established, without any restriction whatsoever. * * *"* (Italics supplied.)

The Civil Code of Puerto Rico has several relevant sections regarding servitudes. Section 465 provides that a servitude is a

charge imposed on the servient tenement for the benefit of the dominant tenement. Section 470 states that servitudes are inseparable from the tenements to which they belong. Manresa, in commenting upon the similar provision of the Spanish Civil Code, says that it is an absolute rule that the benefit of a real servitude is inseparable from the tenements. 4 Manresa, Codigo Civil Espanol (5th Ed. 1924) 538, 540. Section 530 of the Code provides that the owner of an estate can charge it with any servitudes he deems fit in whatever manner he desires consistent with law and public order. Section 534 further provides that the title deed determines the rights of the dominant, and the obligations of the servient, tenement. Manresa comments that the will of the parties as expressed in the deed will prevail as to the rights and duties of the tenements, and Scaevola says that this will of the parties will be liberally construed. 4 Manresa, op. cit., at 743; 10 Scaevola, Espana Codigo Civil (1895) 601.

Applying these provisions to the deed in question, the plaintiff contends that as a matter of law a servitude may only be used for the benefit of the dominant tenement, and that the deed, properly construed, gave the defendants' predecessor simply a free and unrestricted use of the railroad for the benefit of the Juncos Central property. To support his contention, the plaintiff cites numerous authorities for the well-established proposition that an easement appurtenant to one piece of property cannot be enlarged or extended to other parcels of land. E. g., Diocese of Trenton v. Toman, Ct.Ch.1908, 74 N.J. Eq. 702, 70 A. 606; McCullough v. Broad Exchange Co., 1st Dept.1905, 101 App.Div. 566, 92 N.Y.S. 533. We entirely agree with the proposition of these cases that where a servitude is granted for the benefit of certain property, it cannot be extended to other property. But the defendants maintain that Deed No. 133 did something more.

It is the contention of the defendants that the proper construction of the deed in the light of the Puerto Rican law is that every real servitude must be attached to some piece of real property to which it belongs and with which it passes, but that the use which may be made of this servitude must be discovered from the words of the deed. Thus they maintain that Deed No. 133 created a servitude that belongs to and is inseparable from the Juncos Central property, but the use of which is to be free and unrestricted to the owners of that property. We agree with the defendants.

Such a construction is consistent with all the cited provisions of the Civil Code of Puerto Rico and the language of the deed. The servitude is in favor of the Juncos Central property; it is attached to it. It, therefore, is a real as distinguished from a personal servitude, and can be perpetual in character. It is inseparable from the property. It cannot be conveyed without the property, nor will the conveyance of other property carry with it any right to the use of this servitude. However, the use to which this inseparable servitude may be put by the owners of the dominant tenement must be determined by the language of the deed creating the servitude. This is a well-established rule, and the common-law cases are in accord with Sections 530 and 534 of the Civil Code of Puerto Rico on this point. E. g., Chapman v. Lambert, 1911, 176 Ind. 461, 96 N.E. 459; Parsons v. New York, N. H. & H. R. R., 1913, 216 Mass. 269, 103 N.E. 693; Herman v. Roberts, 1890, 119 N.Y. 37, 23 N.E. 442, 7 L.R.A. 226, 16 Am.St.Rep. 800.

The deed provides that the cars and engines of the Juncos Central Company may "run freely over the roads established without any restriction." This court in Mendez v. Baetjer, supra, 106 F.2d at 166, said that plainer language could scarcely have been used to show that the use of the railroad was to be unlimited. The deed having been drawn by the grantor must be construed more strongly against him. If he had intended to create an easement for the unlimited benefit of the dominant estate only, there was no need for the words granting free and unrestricted use. A servitude for the benefit of certain property, unless specifically restricted in the grant, would as a matter of course give the owner of the dominant tenement the right to use it without restriction for the benefit of the dominant tenement. The addition of the words expressly granting the right to run the rolling stock freely and without restriction must have been intended to grant a right to unlimited use to the owner of the dominant tenement even if such use were not strictly for the benefit of the Juncos Central property. The further statement in the deed that "in all the described properties the railroad has been

installed for a long time" and the wide use to which the railroad had been put prior to the making of the deed in 1917 make us even more certain that an unlimited use was intended to be and was granted. That the plaintiff is bound by this grant has been thoroughly discussed and settled in the first and second suits.

The defendants as owners of the dominant tenement are entitled to make free and unrestricted use of the railroad on the right of way across the Mercedes property granted in Deed No. 133 and are not required to restrict such use to that which benefits the Juncos Central property. The plaintiff's bill of complaint was properly dismissed.

The decree of the District Court is affirmed, with costs to the appellees.