ALEJANDRINA BLANCO ROMANO, ETC., Plaintiff, Appellee and Appellant, *v.* THE CAPITAL OF PUERTO RICO, ETC., and MANUEL DE J. CANINO, Defendants and Appellant, the former.

No. 11071. Argued February 1, 1954.—Decided May 17, 1954.

608

*Rodolfo F. Aponte* for defendant, appellant and appellee. *José Benet Colón* for plaintiff, appellee and appellant.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

In 1941 Alejandrina Blanco Romano purchased a lot of land which she sold to Luis Martínez Gelabert in 1942 for $700.15. Within a short time a controversy arose between Martínez and the Municipality because the latter claimed it owned the lot. In 1942 Martínez instituted a suit to quiet title to the lot and to require the Municipality to remove the ruins of an abandoned slaughter-house which had belonged to the Municipality and was located on the lot.

In 1943 Alejandrina Blanco and Martínez made an agreement to rescind the sale of the lot to the latter. Under this agreement Alejandrina Blanco acquired the rights and assumed the liabilities of Martínez in the suit to quiet title. The suit was tried in the former district court and a judgment was rendered in favor of the plaintiff. We reversed this judgment and entered a new judgment declaring the Municipality the owner of the lot. *Martínez* v. *Municipality*, 64 P.R.R. 153.

However, our judgment did not terminate the controversy. The former district court subsequently granted a motion filed by the plaintiff for a new trial on the ground of newly discovered evidence. On appeal, we affirmed the order granting the new trial. The case was tried again and on the basis of the newly discovered evidence the judgment this time was in favor of the plaintiff. This judgment, which became final in 1948, provided (1) that the plaintiff owned the lot, (2) that the defendant must remove the abandoned slaughter-house thereon, and (3) that the plaintiff was awarded costs but no attorney's fees.

We now reach the case before us. After the judgment in the suit involving title to the lot became final in 1948, Alejandrina Blanco, assisted by her husband, Lic. José Benet Colón, filed a new suit in 1949—the present case—against the Municipality of Río Piedras and Manuel de J. Canino

for (1) damages because the plaintiff and Martínez had allegedly been deprived of the use of the lot for a number of years, (2) the value of the earth allegedly removed from the lot by Canino and the depreciation in the value of the land which allegedly resulted therefrom, (3) attorney's fees allegedly incurred by Alejandrina Blanco in the suit involving title to the lot, and (4) punitive damages. Thereafter, the Capital of Puerto Rico was substituted for the Municipality of Río Piedras as the defendant pursuant to Act No. 210, Laws of Puerto Rico, 1951.

After a trial on the merits, the Superior Court entered a judgment (a) for the defendant Canino and (b) for the plaintiff against the Capital for $5,405.94, costs and attorney's fees of $350. On the question of removal of earth from the lot, the trial court held that no damages were due the plaintiff either from Canino or from the Capital. The judgment in favor of the plaintiff against the Capital for $5,405.94 as damages was composed of the following items: (1) $1,369.20 (6% interest for 7 years—the period the trial court found the plaintiff had been deprived of the use of the lot—on $3,260.15, which the trial court found to be the value of the lot) ; (2) $3,500 for the legal services of Lic. Benet in the previous suit to try title; (3) $500 as a fee paid to another attorney in the same previous suit; (4) costs of $36.74 in the said previous suit. Both the plaintiff and the Capital have appealed from the judgment of the Superior Court. [1]

■ We examine first the contention of the Capital that the trial court erred in awarding as damages in this suit attorney's fees incurred in the previous suit to try title. If the plaintiff were of the view that she was entitled to attorney's fees in connection with the suit involving title to the lot, she was required to collect them within the said suit.

---

[1] The portion of the judgment in favor of the defendant Canino has not been appealed. We are therefore not concerned with his alleged liability.

Indeed, as we have seen in that case the judgment of the trial court specifically provided that the plaintiff was not entitled to attorney's fees. And the plaintiff did not appeal from that portion of the judgment, which has become final. We agree with the defendant that the plaintiff cannot now relitigate that question by filing a new suit claiming attorney's fees under the guise of damages resulting from the controversy as to title to the lot. This is in accord with our holding in *Vélez* v. *General Motors Acceptance Corp.*, 59 P.R.R. 583, 587. As we pointed out in *Avalo* v. *Cacho*, 73 P.R.R. 274, 281, the cases where we have held that attorney's fees may be recovered as damages where they were incurred to obtain the dissolution of a restraining order or an illegal attachment are distinguishable. *Blanco* v. *Hernández et al.*, 19 P.R.R. 769, the only case cited by the trial court on this point, apparently involved different facts and contains no discussion of the question before us.

■ The same considerations which prevent a subsequent suit for attorney's fees as damages incurred in the previous suit result in barring the present suit for costs awarded, but not collected, in the previous suit. See *Rosario* v. *Ruiz*, 63 P.R.R. 89.

■ The next question involves the issue of damages because the plaintiff was deprived of the use of the lot for a number of years. The Capital contends that the plaintiff is barred by the doctrine of *res judicata* from suing for such damages because she could have, but failed, to litigate this issue in the previous suit to try title. See *Avellanet* v. *Porto Rican Express Co.*, 64 P.R.R. 660, 667; *Miller* v. *Cía. Ron Carioca Destilería, Inc.*, 71 P.R.R. 662; *People* v. *Lugo*, 64 P.R.R. 529, 533; *Heirs of Rivera* v. *Lugo*, 63 P.R.R. 13; *Laloma* v. *Fernández*, 61 P.R.R. 550; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Méndez* v. *Bowie*, 118 F. 2d 435 (C.A. 1, 1941). We adopted the contrary rule in *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190. In this case we held that if a

plaintiff fails to join his claim for rents and profits in a revendication suit, he is not thereby barred from bringing a subsequent suit therefor after he has obtained judgment in the revendication suit. See also *Encarnación* v. *Maeso*, 48 P.R.R. 468; *Blanco* v. *Hernández et al.*, *supra.* We recognize that the rule may be different in continental United States. *Cf. McCaffrey* v. *Wiley*, 230 P. 2d 152 (Cal., 1951); *Hunter* v. *Delta Realty Co.*, 169 S. W. 2d 936 (Mo., 1943); *Bruton* v. *Carolina Power & Light Co.*, 6 S. E. 2d 822 (N. C., 1940); *United States* v. *Munsingwear*, 340 U.S. 36; *Angel* v. *Bullington*, 330 U. S. 183; *Restatement, Judgments,* § 61–67, particularly Illustration 5, pp. 246–7, Comment a, p. 283, p. 239; *Developments in The Law-Res Judicata*, 65 Harv. L. Rev. 818, 824–831, particularly pages 827 and 829; Clark *on Code Pleading*, 2nd ed., 127–28, 136, 473–78; Freeman *on Judgments*, 5th ed., § 597, p. 1258; Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 22–26. But, for the reasons stated in the *Capó* case, we adhere to our rule. The claim for damages for deprivation of the use of the land was not barred by the doctrine of *res judicata* in this case.[2]

 The defendant then contends that the trial court erred in weighing the evidence when it concluded that (*a*) the defendant deprived the plaintiff of the use of the land and (*b*) the plaintiff was entitled to damages of $1,369.20 for that reason. The conclusion of the trial court as to (*a*) is supported by the evidence and we do not disturb it. As to (*b*), the trial court found that "the lots" were worth $3,260.15; that the plaintiff had been deprived of possession thereof by the defendant for 7 years; and that the plaintiff

---

[2] The subsequent suit for damages would apparently not be barred by *res judicata* if we treated the previous case as a suit for a declaratory judgment rather than a revendication suit. See *Winborne* v. *Doyle*, 59 S.E. 2d 90, 93 (Va., 1950); *Big Cola Corporation et al.* v. *World Bottling Co., Limited*, 134 F.2d 718, 723 (C.A. 6, 1943); *Cotrone* v. *Iervolino*, 54 N.Y.S. 2d 119 (N.Y., 1945); *Great Northern Ry. Co.* v. *Mustad*, 33 N.W. 2d 436, 441 (N.D., 1948) *Restatement, Judgments,* § 77, Comment b. pp. 343–44; *Developments In the Law—Res Judicata*, 65 Harv.L.Rev. 820, 881–82; 2 *Anderson, Declaratory Judgments*, § 461 p. 1103. *Cf. Developments In The Law—Declaratory Judgments*, 62 Harv.L.Rev. 787, 843–44.

was therefore entitled to 6% interest of $3,260.15 for 7 years, or $1,369.20.

The defendant argues that the plaintiff was deprived of possession for 5 years, 6 months and 23 days, and not for 7 years. We do not agree. On the other hand, we think the figure of 7 years found by the trial court is incorrect. There is some evidence in the record that no dispute as to the title to the lot arose until March 5, 1942, the date Martínez acquired it. However, since the record also contains evidence that the said dispute already existed in 1941, we accept the finding of fact of the Superior Court to that effect. But obviously the plaintiff's damages did not begin to run until October 25, 1941, the date she acquired the lot. She was therefore entitled to damages not for 7 years but for 6 years, 9 months and 6 days which was the period of time between October 25, 1941 and July 31, 1948, the date the judgment in her favor in the previous suit became final.

The trial court as we have seen found that the damages were 6% interest for the period of deprivation of use on $3,260.15, the value of the lot, according to the trial court. The trial court apparently utilized the figure of $4.00 a square meter as the value of the lot because that was the amount awarded to the plaintiff for an adjacent tract in a suit filed by the plaintiff against the People of Puerto Rico in 1945. The defendant does not dispute this valuation of $4.00 a square meter. However, as the defendant correctly points out, the trial court, apparently confusing the two lots, awarded damages at $4.00 a meter on a lot considerably larger than the lot in dispute. The record clearly shows that the latter was only 350.075 square meters. The interest should therefore have been calculated on a valuation of $1,400.30 —$4.00 × 350.075 square meters—and not on $3,260.15. Accordingly, the damages of the plaintiff were 6% on $1,400.30 for 6 years, 9 months and 6 days, or $568.52.[3]

---

[3] We note in passing that when the litigation over title to the land had terminated in 1948 and the plaintiff was finally able to sell the lot, she

In view of the foregoing, the trial court also erred in awarding the plaintiff $350 for attorney's fees in this case.

The plaintiff contends in her appeal that the trial court erred in not granting her (1) damages for the alleged removal of earth from the lot, (2) double damages because of depreciation in the value of the dollar, and (3) punitive damages. We have examined these contentions and find no error in the action of the trial court with respect thereto.

The judgment of the Superior Court will be modified to provide that the plaintiff is entitled to $568.52 without attorney's fees, as damages for deprivation of the use of the land. As thus modified, the judgment will be affirmed.

---

### ON MOTION FOR RECONSIDERATION
Argued June 14, 1954.—Decided December 22, 1954.

This is a suit among other things for (1) damages because the plaintiff was deprived of the use of land for a number of years, and (2) the value of earth allegedly removed from the said land and the depreciation in the value of the land resulting therefrom. The facts are set forth in our opinion and judgment of May 17, 1954, in which we modified the judgment of the Superior Court to provide that the plaintiff was entitled to damages as to item 1 in the amount of $568.52. We reached this figure by granting to the plaintiff, for the period of time the defendant held the land, 6% interest on $1,400.30—the value of 350.075 sq. meters of land at $4 a meter. We affirmed that portion of the judgment of the trial court which rejected the plaintiff's claim for the alleged removal of earth from the land in question, and we set aside the award to the plaintiff of $350 for attorney's fees.

In view of the plaintiff's motion for reconsideration, we entered an order requiring the defendant to answer the motion as to whether (1) 350.075, 491.45, 990.075, or some other

---

sold it in 1949 for $3,500, whereas she had originally sold in it 1942 to Martínez for $700.15. The postponement of any subsequent sale—after rescission in 1943 of the sale to Martínez—until 1949 was therefore quite profitable to her.

amount of sq. meters was the size of the tract of which the plaintiff had been illegally deprived; (2) any damages should be granted against the defendant for removal of earth from lot No. 25 and lot No. 26, and for removal of an alleged hill on lot No. 25; (3) the award of attorney's fees should be affirmed, modified or reversed in the light of *Soto* v. *Lugo*, 76 P.R.R. 416.

■ As to the first point, we have once more carefully examined the record both in this case and in *Martínez* v. *Municipality*, 64 P.R.R. 153, which is case No. 8848 in this Court. Our new study fortifies our original conclusion that the plaintiff did not establish that she was illegally deprived of more than 350.075 sq. meters of land. As noted in our original opinion in this case, the issue in 64 P.R.R. 153 was the ownership of a tract of land and the size thereof; it was only after that was settled in the said suit, that the present case for damages was filed and tried. When we examine the suit to quiet title—the first case—we find that paragraph 2 of the complaint recites that it involves lot No. 25, consisting of 350.075 sq. meters, described in detail in that paragraph. The judgment of the trial court in that case was that the plaintiff owned the tract of land described in the said second paragraph. When we reversed that judgment and held that the defendant owned the said land in 64 P.R.R. 153, we likewise specifically referred in our opinion to lot No. 25. The plaintiff, throughout her brief in that case, referred over and over again to lot No. 25 as being the subject of the litigation. See pp. 3, 6, 8, 12, 13, 14, 18, and 19 of plaintiff's brief in case No. 8848. In the motion filed in this Court for reconsideration of our decision in 64 P.R.R. 153, which we denied, the plaintiff repeated that lot No. 25 was the subject of the litigation. Even more significantly, she says in the motion for reconsideration that Canino ". . . appears acquiring by exchange that *lot 25* from the municipality during the course of this suit . . .". (Italics ours.) In her memorandum in support of the motion, the plaintiff says that ". . . the measure-

ment of lots 25 and 26 is 790 meters and, *at the most, the municipality never has claimed more than 491 meters.*" (Italics ours.) The net effect is that at this stage of the case —judgment for the defendant by virtue of our opinion in 64 P.R.R. 153—the case unquestionably involved only lot No. 25, consisting of 350.075 sq. meters.

As noted in our original opinion herein of May 17, 1954, [*ante*, p. 607] a motion for a new trial of the case in which we rendered our judgment in favor of the defendant in 64 P.R.R. 153 was granted by the trial court. The case was tried again and a new judgment was entered in 1947 in favor of the plaintiff from which no appeal was taken, the judgment becoming final in 1948. An important piece of evidence at the new trial was the answer of the defendant's predecessor in interest in an old lawsuit in the Federal Court. It is true that the said answer referred to the land *there in dispute* as consisting of about 1,000 sq. meters, and that the said 1,000-meter tract included the land involved herein. But there is nothing in the record indicating that the Federal case, which was decided in 1911, involved precisely the same tract with which we are here concerned, which was platted in 1937. On the contrary, the judgment which was entered as a result of the new trial—as in our decision in 64 P.R.R. 153—clearly involved only lot No. 25, which was described as containing only 350.075 sq. meters.

The issue of title having been settled, the plaintiff filed the instant case, in which she prays for damages for deprivation of the use of *two* tracts from *1941 until 1948.* The two tracts are described as lot No. 25 on the plan of urbanization, consisting of 350.075 sq. meters, and lot No. 26 on the same plan, consisting of 640 sq. meters. In answer to interrogatories of the defendant in the present case, the plaintiff replied that, as to lot No. 25, in 1949 she sold 304.48 meters to doña Sara García de Viera for $2,900, and that "the remainder" was sold to Roberto Rivera in 1949 for

$600. It is significant that there is nothing in the record to show precisely what amount of land was involved in the sale of "the remainder". Similarly, in reply to the same interrogatories, the plaintiff answered that, as to lot No. 26, she sold 383.74 sq. meters to Roberto Rivera on November 24, *1944* for $2,800, and that "the remainder" of 251.81 sq. meters was condemned by the People of Puerto Rico, which was required to pay the plaintiff $1,186.37 in a judgment dated December 18, *1946*.

The case in which the plaintiff obtained the said judgment of $1,186.37 was not a condemnation suit as such. Rather the plaintiff filed a suit for revendication against the People of Puerto Rico. The trial court found in that case that the plaintiff had turned the land over to the government and that the only dispute was as to price. The court therefore granted the plaintiff a money judgment instead of returning the land to her, and awarded her $4 a meter therefor. In the course of its opinion, the trial court, summarizing the testimony of Lic. Benet, the husband of the plaintiff, said that Lic. Benet testified that his wife ". . . bought lots 25 and 26 of the said urbanization, on the first of which, that had an area of 350 sq. meters, was located the old slaughterhouse of Río Piedras; that she kept lot No. 26, the lot No. 25 having been the subject of a prolonged suit which is still pending, *and that as to lot No. 26 there never has been a suit.*" (Italics ours).

In the case before us the trial court found that lots 25 and 26, consisting of 350.075 and 640 sq. meters, respectively, belonged to the plaintiff, and that on the 1937 plan the slaughterhouse appeared as situated on lots 25 and 26. It also found that by Ordinance 250 of 1942 the defendant municipality, alleging that it owned lots 25 and 26, exchanged them with Canino for a lot belonging to the latter, and that this exchange was formalized by a deed of December 29, 1944. *Likewise, it found that the judgment in favor*

*of the plaintiff of 1947, which became final in 1948, shows that the plaintiff was the owner of lots 25 and 26.*

The foregoing findings of fact, insofar as they indicate that lot No. 26 is involved herein, are without support in the evidence, except that the finding as to the location of the lots on the 1937 plan may perhaps be partially supported by the fact that the plan seems to show that the slaughterhouse covered lot 25 and a tiny portion of lot 26 in an amount not readily ascertainable.[1] As noted above, the judgment which was granted at the new trial after our decision in 64 P.R.R. 153 was solely for lot No. 25, and did not include lot No. 26. Ordinance No. 250 of 1942 does create some confusion because at first blush it seems to provide that Canino shall receive 491 sq. meters. But this ordinance also contains the report of a commission, appointed to study the matter, to the effect that the lot has approximately 300 sq. meters. And the deed of December 29, 1944, carrying out the terms of the ordinance, specifically recites that it had been measured by a land surveyor and that it might be more or less than the amount indicated, in which case Canino would benefit from the larger amount but that he would not have any claim if it proved to be smaller. This is certainly some indication that the municipality and Canino were not certain as to the size of lot No. 25 and really intended to convey only lot No. 25, whatever its measurements might be. Moreover, as we have seen, in the motion for reconsideration of our opinion in 64 P.R.R. 153, the plaintiff herself asserts that Canino acquired from the municipality by exchange *lot No. 25.* And the plaintiff has never argued that lot No. 25 contained more than 350.075 sq. meters.

---

[1] This contrasts with Exhibit B of the plaintiff, a 1942 plan, on which the slaughterhouse appears to be located wholly on lot No. 25, and not occupying any part of lot No. 26. The plaintiff, at pp. 14 and 19 of her brief in case No. 8848, also refers to the urbanization plan as showing that the former slaughterhouse was located on lot No. 25. To the same effect, 64 P.R.R. 153, 157.

We have been unable to find in the record any basis for the finding of the trial court that from 1941 to 1948 the municipality deprived the plaintiff of the use and enjoyment of lots 25 and 26. In addition to the fact that the case was tried—both in 64 P.R.R. 153 and at the new trial—on the theory that only lot No. 25, consisting of 350.075 sq. meters, was in controversy between the parties, the finding of fact herein that the plaintiff was deprived of the use of lots 25 and 26 is without support in the record of the instant case. While the complaint for damages now before us speaks of two lots with the measurements of 350.075 and 640 meters, respectively, and while Lic. Benet testified in a very general way throughout this case as to lots 25 and 26, it is clear that lot No. 25 was the only land ever in dispute between the parties. Perhaps the best proof of this fact is that, as already noted, while this dispute was going on between 1941 and 1948 the plaintiff sold part of lot No. 26—383.74 sq. meters—to Roberto Rivera in *1944*, and was compensated for 251.81 sq. meters thereof in *1946* by a judgment in a case against the People of Puerto Rico. Also, as pointed out above, Lic. Benet testified in the suit against the People which culminated in a judgment in the plaintiff's favor in 1946 that there was no dispute with the municipality as to lot No. 26, and that the plaintiff wished compensation therefor because the People had apparently mistakenly paid Canino for its value. These two portions of lot No. 26—383.74 and 251.81 sq. meters—add up to 635.55 sq. meters, whereas the plaintiff in this case claims damages for lot No. 26 consisting of 640 sq. meters. These two figures—635.55 as against 640—are so nearly equal that it is extremely unlikely that any part of lot No. 26 was in dispute between the plaintiff and the municipality from 1941 to 1948. Indeed, the best proof that the municipality was not interfering during that time with the plaintiff's possession and use of lot No. 26—consisting of 640 sq. meters—is the fact that

she disposed of 635.55 sq. meters thereof to Rivera and the People of Puerto Rico while the litigation herein was pending.[2]

In view of the foregoing, we adhere to the view expressed in our original opinion of May 17, 1954 in this case that "...the trial court, apparently confusing the two lots, awarded damages at $4.00 a meter on a lot considerably larger than the lot in dispute. The record clearly shows that the latter was only 350.075 square meters." We shall therefore deny the motion for reconsideration insofar as it requests us to award damages for deprivation of the use of a larger tract of land.

■ The second question before us on reconsideration is whether any damages should be granted against the defendant for removal of earth from lots 25 and *26*, and for removal of an alleged hill on lot No. 25. Lot No. 25 was acquired from the municipality by Manuel de J. Canino by exchange for another lot subject to the result of the pending litigation between the municipality and the plaintiff as to title thereto. Thereafter, the exchange was rescinded. The trial court found that during the period Canino was in possession "...earth was removed from lots 25 and 26. We do not believe that it has been conclusively established that the said earth was utilized to fill the lot that Canino conveyed in exchange to the municipality." The trial court therefore granted no damages for removal of earth against either the municipality or Canino. The plaintiff appealed on this point as to the municipality, but not as to Canino.

---

[2] Lic. Benet testified in a general way in this case that the dispute of his wife, the plaintiff, with the municipality always concerned lots Nos. 25 and 26, and that he took up with the Mayor of Río Piedras the question of removing the slaughterhouse therefrom, which was on lots Nos. 25 and 26. But, apart from what we have already said, the documentary evidence offered by the plaintiff at the trial in the instant case shows that in fact the dispute with the municipality was always over lot No. 25, consisting of 350.075 sq. meters. This is so stated in the letters of March 11, 1942, March 27, 1943, June 30, 1943, and July 19, 1943 from Lic. Benet to the municipality.

We have already held that the municipality did not deprive the plaintiff of the use of lot No. 26 at any time. We do not stop to determine if Canino removed any earth from lot No. 26. Assuming he did, the municipality had nothing to do with his action in that respect, as it transferred to him in exchange only lot No. 25. And the plaintiff did not appeal from the judgment as to this point in favor of Canino.

■ On the question of the value of the earth removed by Canino from lot No. 25—and the destruction of the alleged hill thereon which, it may perhaps be argued, might have been attractive for residential purposes—there is nothing of a sufficiently solid basis in the record which enables us to reverse the findings of fact of the trial court and to award a specific sum of damages therefor. The only testimony on this subject was that of Lic. Benet, who stated: ". . . I . . . measured that land of the municipality, and it had 491, what they said, plus three meters high, because it was a little hill in the front and two and a half; then I cubed it and I found that they had taken out about 650 sq. meters of stone worth about two thousand dollars." Immediately thereafter Lic. Benet referred to this as cubic meters of earth, and when asked for details, he testified that each truck of earth, consisting of 3 cubic meters, was worth $4.50. But this would mean, for 650 cubic meters, that it was worth, on the basis of his own figures, only $976.50, not $2,000.

Subsequently, Lic. Benet, using the same figures of a lot of *491* square meters, 3 meters high in the front and 2-½ meters high as to the rest, said the earth removed was 1,351.48 meters. In both instances he made this estimate after the earth was allegedly removed, without having previously measured the height. He also testified that Canino— not employees of the municipality—had removed the earth, which according to him, was used to fill the lot belonging to Canino which the municipality had received in the exchange with the latter.

The testimony of Canino was that he demolished the abandoned slaughterhouse, filled the cesspool of lots 24, 25 and 26, levelled off the "protuberance"—he said it was not "a hill"—on lot No. 25, and with the earth therefrom filled the hole on lot 26. He testified that he did not use that earth to fill the lot he transferred to the municipality by exchange and which was returned to him when his transaction with the municipality was rescinded.

We think the record supports the finding of the trial court that it was not conclusively established that the earth was used to fill the lot Canino transferred to the municipality and which was later reconveyed to Canino. We also are unable to ascertain definitively either the value, if any, or amount of earth removed from lot No. 25, except to say it could not have been a substantial amount if Canino removed only a "protuberance". Finally, it was used to fill lot No. 26, which as we have seen belonged to the plaintiff and for which she received in two transactions $2,800 and $1,186.37 in 1944 and 1946, respectively. And by the time the plaintiff sold lot No. 25 in 1949, far from being impaired in value, it had risen in value from approximately $700 in 1942 to $3,500 in 1949. [3] Under all these circumstances, we find it impossible to reverse the findings of fact of the trial court and to grant the plaintiff against the municipality a specific sum as damages for the removal of a definite amount of earth from lot No. 25 at a value sufficiently established in the record. We therefore did not err in our original opinion of May 17,

---

[3] In footnote 3 of our original opinion of May 17, 1954 we said: "We note in passing that when the litigation over title to the land had terminated in 1948 and the plaintiff was finally able to sell the lot, she sold it in 1949 for $3,500, whereas she had originally sold it in 1942 to Martínez for $700.15. The postponement of any subsequent sale—after rescission in 1943 of the sale to Martínez—until 1949 was therefore quite profitable to her." To this statement, we now add that the plaintiff, who rescinded the 1943 sale to Martínez in order that she rather than Martínez might conduct this litigation, said in her motion for reconsideration of our opinion in 64 P.R.R. 153: "When it was sold [in 1943] it was worth from $700 to $1,000." (Matter in brackets ours).

1954 affirming the judgment of the trial court which did not grant damages for removal of earth from lot No. 25.

■ The last point in the motion for reconsideration is whether we erred in setting aside the award of $350 for attorney's fees in this case, in the light of Soto v. Lugo, supra. The Soto case is distinguishable. There we held that the trial court did not err in awarding attorney's fees when the defendants in a suit for damages arising out of an automobile accident did not admit their liability until seven days before trial. It is true that, as we pointed out in that case, the fact that the judgment was substantially lower than the claim did not, of itself, show lack of obstinacy, in view of the delay in admitting liability. But in the present case the plaintiff claimed damages for an additional tract—lot No. 26—to which she was not entitled. She also claimed—as our original opinion shows—a number of items of damages in large amounts to which she was likewise not entitled. The result we have reached on the merits of this case satisfies us that, under all the circumstances, it was error to assess attorney's fees against the defendant. Accordingly, we see no reason for modifying our original opinion and judgment on this point.

For the reasons stated, the motion for reconsideration of our opinion and judgment of May 17, 1954 in this case will be denied.

